**ORAL ARGUMENT NOT YET SCHEDULED**

**No. 26-5074**

# UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

J.G.G., ET AL.,

*Plaintiffs-Appellees*,

*v.*

DONALD J. TRUMP, ET AL.,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the District of Columbia, No. 1:25-cv-00766
Before the Honorable James E. Boasberg

**BRIEF OF CLASS ACTION AND HABEAS PROFESSORS AS AMICI CURIAE IN SUPPORT OF APPELLEES AND AFFIRMANCE**


NOAH A. LEVINE
ALAN E. SCHOENFELD
JUAN M. RUIZ TORO
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800


June 15, 2026

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), amici curiae certify as follows:

### A. Parties And Amici

Except for the amici joining this brief and any other amici who had not yet entered an appearance in this case as of the filing of this brief, all parties, intervenors, and amici appearing before the district court and this Court are listed in appellant's brief.

### B. Rulings Under Review

References to the ruling at issue appear in appellant's brief.

### C. Related Cases

Related cases are listed in appellant's brief.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, amici curiae state that no party to this brief is a publicly held corporation, issues stock, or has a parent corporation.

## D.C. CIRCUIT RULE 29(d) STATEMENT

Pursuant to D.C. Circuit Rule 29(d), amici curiae state that this separate brief is necessary to provide amici's unique perspective on the significance of this appeal for the history and practice of habeas class actions.

## TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..... i

CORPORATE DISCLOSURE STATEMENT ..... ii

D.C. CIRCUIT RULE 29(d) STATEMENT ..... iii

TABLE OF AUTHORITIES ..... v

INTEREST OF AMICI CURIAE ..... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ..... 3

ARGUMENT ..... 5

I. SIX DECADES OF UNIFORM JUDICIAL PRACTICE CONFIRMS THAT HABEAS CLASS ACTIONS ARE PERMISSIBLE ..... 5

II. THE CONSENSUS CORRECTLY RECOGNIZES THAT HABEAS CLASS ACTIONS ARE PERMISSIBLE ..... 10

A. No Federal Statute Bars Class Actions In Habeas Cases ..... 11

B. Decades Of Habeas Practice Have Conformed To Class Action Procedures ..... 12

C. Courts May Apply Rule 23's Content By Analogy ..... 16

III. HABEAS'S HISTORICAL RECORD REFUTES THE GOVERNMENT'S CLAIM THAT HABEAS IS INHERENTLY INDIVIDUALIZED ..... 22

CONCLUSION ..... 27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES*

## CASES


Page(s)

*AARP v. Trump*, 605 U.S. 91 (2025) ....................................................4, 17, 18, 21

*Adams v. United States ex rel. McCann*, 317 U.S. 269 (1942)...............................17

*Adderly v. Wainwright*, 46 F.R.D. 97 (M.D. Fla. 1968) ..........................................6

*Adderly v. Wainwright*, 58 F.R.D. 389 (M.D. Fla. 1972) .......................................20

*Alli v. Decker*, 650 F.3d 1007 (3d Cir. 2011) ..........................................................9

*Barber v. Tadayasu Abo*, 186 F.2d 775 (9th Cir. 1951) .........................................26

*Bijeol v. Benson*, 513 F.2d 965 (7th Cir. 1975) ..................................................7, 17

*Bracy v. Gramley*, 520 U.S. 899 (1997) ....................................................10, 17, 18

*Brito v. Garland*, 22 F.4th 240 (1st Cir. 2021) .........................................................8

*Brown v. Vermuden*, 22 Eng. Rep. 796 (Ch. 1676) ...............................................23

*Browne v. Estelle*, 544 F.2d 1244 (5th Cir. 1977) ....................................................9

*Bushel's Case*, 84 Eng. Rep. 1123 (1670)...............................................................22

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ..........................................................23

*Chy Lung v. Freeman*, 92 U.S. 275 (1875)........................................................24, 25

*Colyer v. Skeffington*, 265 F. 17 (D. Mass. 1920) ..................................................25

*Darnel's Case,* 3 Cobbett's St. Tr. 1 (K.B. 1627) ..................................................22

*Ex parte D'Olivera*, 7 F. Cas. 853 (C.C.D. Mass. 1813).........................................24

*Ex parte Tadayasu Abo*, 76 F. Supp. 664 (N.D. Cal. 1947) .............................14, 26


---

* Authorities upon which amici curiae chiefly rely are marked with asterisks.

*Ex parte Toscano*, 208 F. 938 (S.D. Cal. 1913)....................................................25

*Guzman Chavez v. Hott*, 940 F.3d 867 (4th Cir. 2019) ............................................9

*Hamama v. Adducci*, 912 F.3d 869 (6th Cir. 2018)..................................................9

**Harris v. Nelson*, 394 U.S. 286 (1969) ....................................... 3, 7, 10, 13, 15-19

*Hill v. Nelson*, 272 F. Supp. 790 (N.D. Cal. 1967)................................................19

*Hilton v. Braunskill*, 481 U.S. 770 (1987)..............................................................19

*Holiday v. Johnston*, 313 U.S. 342 (1941)..............................................................20

*In re Ah Ho*, 11 Haw. 654 (Haw. 1899)...................................................................25

*In re O'Sullivan*, 31 F. 447 (C.C.S.D.N.Y. 1887) ..................................................25

*In re Tatsu*, 10 Haw. 701 (Haw. 1897) ....................................................................25

*Irvin v. Dowd*, 366 U.S. 717 (1961)........................................................................19

*LoBue v. Christopher*, 82 F.3d 1081 (D.C. Cir. 1996) ....................................4, 5, 8

*Malam v. Adducci*, 475 F. Supp. 3d 721 (E.D. Mich. 2020) ..................................20

*Malam v. Adducci*, 2020 WL 4818894 (E.D. Mich. Aug. 19, 2020) ......................20

*McGrath v. Tadayasu Abo*, 186 F.2d 766 (9th Cir. 1951)................................14, 26

*Mead v. Parker*, 464 F.2d 1108 (9th Cir. 1972) .................................................6, 17

*Monk v. Shulkin*, 855 F.3d 1312 (Fed. Cir. 2017)...................................................18

*Napier v. Gertrude*, 542 F.2d 825 (10th Cir. 1976)............................................7, 17

*Peyton v. Rowe*, 391 U.S. 54 (1968)........................................................................19

*Respublica v. Betsey*, 1 U.S. (1 Dall.) 469 (Pa. 1789) ............................................24

*Schall v. Martin*, 467 U.S. 253 (1984).....................................................................13

*Tefel v. Reno*, 180 F.3d 1286 (11th Cir. 1999) .........................................................9

**United States ex rel. Sero v. Preiser*, 506 F.2d 1115 (2d Cir. 1974).......6, 7, 17, 23

*United States ex rel. Standing Bear v. Crook*, 25 F. Cas. 695 (C.C.D. Neb. 1879)....................24

*United States v. The Amistad*, 40 U.S. (15 Pet.) 518 (1841) ....................24

*United States v. New York Telephone Company*, 434 U.S. 159 (1977)....................17

*United States v. Sing Tuck*, 194 U.S. 161 (1904)....................25

*Watts v. Hadden*, 489 F. Supp. 987 (D. Colo. 1980) ....................19

*Williams v. Richardson*, 481 F.2d 358 (8th Cir. 1973)....................6, 17

*Wilson v. Harris*, 378 F.2d 141 (9th Cir. 1967)....................13

**DOCKETED CASES**

*Abo v. Clark*, No. 25294-S (N.D. Cal.)....................26

*Abo v. Clark*, Cons. Nos. 25294-95 (N.D. Cal.) ....................26

*In re Ah Pwong,* No. 1294 (C.C.D. Cal.) ....................25

*United States v. Cinque* (C.C.D. Conn.) ....................24

**STATUTES, RULES, AND REGULATIONS**

1 U.S.C. § 1 ....................23

28 U.S.C.
- § 1651 ....................3, 10, 11, 16, 17
- § 2241 ....................11
- § 2242 ....................23
- § 2243 ....................3, 10-12, 16, 19-21, 23
- § 2254 ....................12
- § 2255 ....................12

Act of Mar. 2, 1833, 4 Stat. 632....................23

Act of Aug. 29, 1842, 5 Stat. 539 ....................23

Habeas Corpus Act of I679, 31 Car. 2 ....................23

Fed. R. Civ. P. 23 ....................5, 20, 21

Fed. R. Civ. P. 81 ........................................................................10, 11, 12

**OTHER AUTHORITIES**

Halliday, Paul D., *Habeas Corpus: From England to Empire* 322 (2010)........................................................................................22

Kovarsky, Lee & D. Theodore Rave, *Habeas Class Actions*, 139 *Harvard Law Review 1501 (2026)* ...........................................8, 9, 10, 12, 14

*Rules Governing Section 2254 Cases in the United States District Courts and Rules Governing Section 2255 Proceedings for the United States District Courts*, Committee on Rules of Practice and Procedure of the Judicial Conference of the United States (2019)........................................................................................21

Wright & Miller, Federal Practice & Procedure § 4268.3 (3d ed. 2025).................8

## INTEREST OF AMICI CURIAE[1]

Amici are professors who study, write, and teach about habeas corpus, class actions, or both. They share an interest in seeing that class action law is applied appropriately in habeas cases.[2]

**Lee Kovarsky** is the Bryant Smith Chair in Law at the University of Texas School of Law.

**D. Theodore Rave** is the Bernard J. Ward Centennial Professor of Law at the University of Texas School of Law.

**Adam Zimmerman** is the Robert Kingsley Professor of Law at the University of Southern California Gould School of Law.

**Maureen Carroll** is a Professor of Law at the University of Michigan Law School.

**Brandon L. Garrett** is the David W. Ichel Distinguished Professor of Law and the Director of the Wilson Center for Science and Justice at Duke Law School.

---

[1] Amici submit this brief pursuant to Federal Rule of Appellate Procedure 29(a)(2). No counsel for a party authored this brief in whole or in part, and no person other than the amici curiae or their counsel made a monetary contribution intended to fund the preparation or submission of this brief. All parties consent to the filing of this brief.

[2] The positions taken herein are those of amici in their individual capacities; they are not positions taken by universities or law schools. Their titles and affiliations are listed for identification only.

**Jordan M. Steiker** is the Judge Robert M. Parker Chair of Law at the University of Texas School of Law.

**Zachary D. Clopton** is the Daniel Hale Williams Professor of Law at Northwestern Pritzker School of Law.

**Alexander A. Reinert** is the Max Freund Professor of Litigation & Advocacy at the Benjamin N. Cardozo School of Law.

## INTRODUCTION AND SUMMARY OF ARGUMENT

For over fifty years, federal courts have certified class actions in habeas cases. Every circuit to address the question has approved the practice. No appellate court has ever rejected it. The Supreme Court has never cast doubt on the propriety of habeas classes in cases where lower courts certified them.

There is good reason for this longstanding practice. The Great Writ exists to ensure that unlawful detention does not go unremedied. When a single government policy invokes the same legal ground to detain hundreds of people, adjudicating that policy's legality once—rather than subjecting it to potentially inconsistent relitigation in hundreds of individual proceedings—serves the Writ's core purpose. Federal courts have understood this function since the 1966 amendments to Rule 23. And the practice has far deeper roots. Group habeas petitions date to sixteenth-century England. They were common at the founding. They recurred throughout the nineteenth and twentieth centuries in cases involving military detention, slavery, and mass immigration. And as this case (among many others) reflects, habeas class actions remain common today.

The decades-long consensus in favor of habeas class actions starts from a simple premise. As the Supreme Court first recognized in *Harris v. Nelson*, 394 U.S. 286, 299 (1969), the All Writs Act (28 U.S.C. § 1651(a)) and the habeas implementing statute (28 U.S.C. § 2243) authorize federal courts to supply the

content of the Federal Rules of Civil Procedure by analogy when doing so is necessary to make habeas review of detention efficient and just. Class procedures serve that function. They prevent hundreds of detainees from relitigating identical legal questions in separate proceedings. They protect against inconsistent determinations about whether the single detention policy is lawful. And they conserve the resources of courts and parties. These factors explain why every circuit to consider the question has permitted habeas class actions. They also explain why thousands of district courts have concluded the same. And they are why the Supreme Court itself invoked the All Writs Act to issue preliminary relief to a putative habeas class in *AARP v. Trump*, 605 U.S. 91, 96-97 (2025) (per curiam) (issuing injunction to prevent removal under the Alien Enemies Act).

The Government's position that habeas class actions are categorically unavailable would require this Court to depart from its reasoning in *LoBue v. Christopher*, 82 F.3d 1081 (D.C. Cir. 1996), to depart from the holdings of five other circuits, and to disregard the consistent practice of the remaining six. In short, the Government's position would unsettle the settled understanding.

Amici submit this brief to show why. Part I of the brief documents the unbroken judicial consensus. Part II demonstrates the legal foundation for that consensus, including most importantly courts' application of Rule 23 by analogy in habeas—the theory on which every leading circuit decision rests. Finally, Part III

traces the longer history of habeas to illustrate how the Writ has frequently relied on collective proceedings to resolve common questions. And in so doing, it shows that there is nothing "inherently" individualized about habeas proceedings.

## ARGUMENT

### I. SIX DECADES OF UNIFORM JUDICIAL PRACTICE CONFIRMS THAT HABEAS CLASS ACTIONS ARE PERMISSIBLE

Three decades ago, in *LoBue v. Christopher*, 82 F.3d 1081 (D.C. Cir. 1996), this Court expressly rejected the notion "that there is no equivalent to class actions in habeas," emphasizing that "courts have in fact developed such equivalents." *Id.* at 1085. The Court was describing a consensus that had grown, without dissent, since Rule 23(b)(2) was introduced in the 1966 amendments to the Federal Rules. Since then, every circuit to have squarely addressed the issue has said that habeas class actions are permissible. The remaining circuits have not declared agreement in formal holdings, but they have embraced it in practice anyway. No appellate court has ever held otherwise.

Courts have been certifying habeas class actions under the modern version of Rule 23 since it was promulgated. In 1966, Rule 23 was amended to introduce subsection (b)(2), which authorizes class treatment where a defendant "has acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). Two years later, a federal district court found that a group of habeas petitioners

challenging Florida's death penalty could proceed "as a class in accordance with Rule 23." *Adderly v. Wainwright*, 46 F.R.D. 97, 99 (M.D. Fla. 1968).

The circuit consensus quickly followed. In 1972, the Ninth Circuit recognized that while "the usual habeas corpus case relates only to the individual petitioner and to his unique problem," there "can be cases, and this is one of them, where the relief sought can be of immediate benefit to a large and amorphous group"—and it held that "[i]n such cases, … a class action may be appropriate." *Mead v. Parker*, 464 F.2d 1108, 1112-1113 (9th Cir. 1972). The following year, the Eighth Circuit agreed in a case challenging psychiatric care at a federal medical facility, noting that "under certain circumstances a class action provides an appropriate procedure to resolve the claims of a group of petitioners and avoid unnecessary duplication of judicial efforts in considering multiple petitions, holding multiple hearings, and writing multiple opinions." *Williams v. Richardson*, 481 F.2d 358, 361 (8th Cir. 1973). *Williams* recognized that "[e]ven the government's counsel conceded … that a habeas corpus class action is not always improper." *Id.*

In 1974, the Second Circuit joined the Ninth and Eighth Circuits, in what remains one of the most-cited cases on the question. In *United States ex rel. Sero v. Preiser*, 506 F.2d 1115 (2d Cir. 1974), the court found "compelling justification for allowing a multi-party proceeding similar to the class action" in habeas cases. *Id.* at 1125. *Sero* concluded that habeas cases were not formally governed by Rule 23, but

viewed the Supreme Court's decision in *Harris v. Nelson* as "confirm[ing] the power of the judiciary, under the All Writs Act, to fashion for habeas actions 'appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage.'" *Id.* at 1125 (quoting *Harris*, 394 U.S. at 299). The *Sero* court then exercised that authority to apply Rule 23's elements by analogy. *See id.* at 1126; *see also infra* Part II.C. Like *Mead* and *Williams*, *Sero* recognized that habeas classes would, in cases raising common questions, serve "[t]he interests of judicial economy, the need for fairness among prisoners similarly situated, and the desirability of certainty in the law," because otherwise, litigation "deal[ing] with only some members of the petitioning class" would "leave[] others open to the possibility of contrary result in another court." *Sero*, 506 F.2d at 1129.

The Seventh Circuit agreed that "a representative procedure analogous to" Rule 23's "class action … may be appropriate in a habeas corpus action under some circumstances" in *Bijeol v. Benson*, 513 F.2d 965 (7th Cir. 1975), a case challenging a parole board's failure to offer prisoners a meaningful and timely hearing. *Id.* at 968 (citing *Sero*, 506 F.2d at 1125). The Tenth Circuit followed suit in *Napier v. Gertrude*, 542 F.2d 825 (10th Cir. 1976), a case challenging a state statute as unconstitutionally vague, citing *Bijeol* and *Sero* and holding that the court may "apply an analogous procedure by reference to Rule 23 in proper circumstances." *Id.* at 827 n.2.

In *LoBue*, this Court joined that consensus, citing *Sero* and Wright & Miller to support its conclusion that "equivalent[s] to class actions in habeas" were proper. *LoBue*, 82 F.3d at 1085; *see also* Wright & Miller, Federal Practice & Procedure § 4268.3 (3d ed. 2025) (collecting cases). Contrary to the Government's suggestion that this Court's language "cuts against the district court's position," (Gov. Br. 53), *LoBue* stripped the plaintiffs of their declaratory remedy *only after* noting that habeas could do the same work—thereby rejecting the intervenor's argument that habeas was inadequate because it deprived him of the possibility of class-wide relief. *See LoBue*, 82 F.3d at 1085.

While the other six circuits have not held expressly that habeas class actions are permissible, they have embraced the practice all the same. Amici reviewed nearly two thousand habeas opinions and orders from these circuits and found no appellate decision rejecting habeas class treatment.[3] *See* Kovarsky & Rave, *Habeas Class Actions*, 139 Harv. L. Rev. 1501, 1514 (2026). Quite the opposite: Those circuits have embraced the practice tacitly but overwhelmingly. The First Circuit permitted a habeas class to seek declaratory relief in an immigration bonding case, *see Brito v. Garland*, 22 F.4th 240, 252 (1st Cir. 2021), and the Third Circuit

[3] To determine the relevant cases, Amici reviewed federal cases including both the terms "habeas" and "class actions" since 1969. *See* Kovarsky & Rave, *Habeas Class Actions*, at 1512.

affirmed habeas class treatment in another such case, *see Alli v. Decker*, 650 F.3d 1007, 1016 (3d Cir. 2011). The Fourth Circuit granted habeas relief to a noncitizen class challenging bond hearings, *see Guzman Chavez v. Hott*, 940 F.3d 867, 882 (4th Cir. 2019), and the Eleventh Circuit remanded a habeas case for class action determination, *see Tefel v. Reno*, 180 F.3d 1286, 1305 (11th Cir. 1999). The Fifth Circuit appeared to allow a habeas class action challenge to a state recidivism statute. *Browne v. Estelle*, 544 F.2d 1244, 1245 (5th Cir. 1977) (per curiam). And in *Hamama v. Adducci*, 912 F.3d 869 (6th Cir. 2018), the Sixth Circuit noted (in dicta) that "there is nothing barring a class from seeking a traditional writ of habeas corpus." *Id.* at 879.

District courts in those circuits overwhelmingly agree. As noted, Amici reviewed nearly 2,000 court decisions from those circuits that hadn't formally recognized habeas class treatment in a binding holding, and they found almost universal consensus. Across all such jurisdictions, district courts have certified habeas class actions challenging various forms of immigration detention and classification, noncitizen removal, denial of counsel for indigent detainees, material witness detention, vagrancy ordinances, bonding practices, conditions of confinement, and COVID-19 mitigation shortfalls. *See* Kovarsky & Rave, *Habeas Class Actions*, at 1514-1516 & nn. 118-127 (collecting cases). In the decisions Amici reviewed, only three district courts even entertained the notion that habeas

class treatment might be unavailable; even so, none of those three decisions actually held that habeas class actions are impermissible. *See id.* at 1516 & n.127.

In short, abandoning class treatment in habeas cases would be unprecedented. No court has ever adopted the Government's position. The Government offers no persuasive response to this long line of cases, and it offers no compelling reason for this Court to depart from the consensus.

## II. THE CONSENSUS CORRECTLY RECOGNIZES THAT HABEAS CLASS ACTIONS ARE PERMISSIBLE

That habeas class actions are permissible rests on a straightforward legal foundation. Rule 81(a)(4) governs which Federal Rules must, may, and must not apply in habeas cases. Under the framework established in *Harris v. Nelson*, 394 U.S. 286 (1969), the analysis proceeds in three steps. First, a Federal Rule *must not* apply where a statute or bespoke habeas rule already specifies the practice. Fed. R. Civ. P. 81(a)(4)(A). Second, where no statute controls, a Rule *must* apply of its own force if habeas practice has historically "conformed" to the civil practice that the rule prescribes. Fed. R. Civ. P. 81(a)(4)(B). Third, even when a Rule does not apply of its own force, courts *may* apply its content—that is, they retain independent authority under the All Writs Act, 28 U.S.C. § 1651(a), and the habeas implementing statute, 28 U.S.C. § 2243, to supply that Rule's content by analogy. *See Harris*, 394 U.S. at 294, 299; *Bracy v. Gramley*, 520 U.S. 899, 904 (1997) (describing *Harris* as holding "that the All Writs Act, 28 U.S.C. § 1651, gave federal courts the power to

‘fashion appropriate modes of procedure’ including discovery, to dispose of habeas petitions ‘as law and justice require’” (citations omitted)).

At each step, the answer favors habeas class actions. No federal statute bars them. Habeas cases have long conformed to the class action procedures that Rule 23 prescribes, and are entirely consistent with them. And the All Writs Act and 28 U.S.C. § 2243 authorize courts to apply Rule 23 by analogy when doing so serves the interests of justice and judicial economy. Every leading circuit decision rests on that analogical authority. And in cases like this one—where a group of detainees all challenge the same unlawful policy—class treatment by analogy to Rule 23 makes good sense, as it best serves the interests of justice and spares courts from having to repeatedly decide the same issue.

### A. No Federal Statute Bars Class Actions In Habeas Cases

The first inquiry under Rule 81 is whether the practice at issue is “specified in a federal statute” or is subject to specialized habeas rules. Fed. R. Civ. P. 81(a)(4)(A). No statute addresses, much less prohibits, class actions in habeas cases.

To start, the habeas statutes do not address class treatment. Congress’s core grant of habeas authority, 28 U.S.C. § 2241, does not limit who may bring a petition or how related claims may be adjudicated. The implementing provision, 28 U.S.C. § 2243, expressly authorizes courts to exercise broad procedural discretion to effectuate review of contested custody. *See infra* Part II.C; *see also* 28 U.S.C.

§ 2243. And although Congress set out specialized rules for postconviction habeas proceedings (which are not at issue here), those statutes (28 U.S.C. §§ 2254, 2255) and the rules adopted under them say nothing about class actions.

No other statute fills the gap here, and Congress's refusal to withdraw all habeas cases from the purview of class treatment is all the more significant given its sustained general attention to class action rules and habeas practice. Congress and the Rules Committee have amended Rules 23 and 81 eight times since habeas class actions became widespread (in 1987, 1998, 2001, 2002, 2003, 2007, 2009, and 2018), and have never disturbed the practice. *See* Kovarsky & Rave, *Habeas Class Actions*, at 1517-1518 & n.137.

### B. Decades Of Habeas Practice Have Conformed To Class Action Procedures

The second step of the *Harris* framework asks whether a Federal Rule *must* apply in habeas because habeas practice "has previously conformed to the practice in civil actions" prescribed by that Federal Rule. Fed. R. Civ. P. 81(a)(4)(B). Here, the relevant Federal Rule is Rule 23 and the relevant practice in civil actions is the management of similar claims through class procedures. Accordingly, if habeas practice "has previously conformed" to that relevant civil practice, then the Federal Rule applies of its own force. While the authority for applying Rule 23 by analogy in habeas is the strongest and most well recognized, *see infra* Part II.C, history also

supports an argument that Rule 81 requires the use of class actions in habeas proceedings in cases where class treatment would satisfy Rule 23's requirements.

The critical question is what the phrase "has previously conformed" means, and what period of practice a court may consider. The lower court in *Harris* read "heretofore conformed" (Rule 81's language at the time) to require that the practice prescribed by the Rule "was actually being used in habeas proceedings" before the Federal Rules took effect on September 16, 1938. *Wilson v. Harris*, 378 F.2d 141, 144 (9th Cir. 1967). That reading would have required evidence of class-like procedures in habeas cases before Rule 23 existed. The Supreme Court reversed and expressly declined to adopt that test. *See Harris*, 394 U.S. at 293. Rather than adopt the Ninth Circuit's rigid cutoff, the Court examined whether Rule 33 was consistent with habeas practice and "the special problems and character of [habeas] proceedings." *Id.* at 295-298. In declining to adopt the lower court's rigid benchmark, the Court necessarily left open the possibility that a Federal Rule might apply of its own force even if it described procedures that developed after 1938. As to Rule 23, since *Harris*, the Supreme Court repeatedly has reserved the question whether the Rule "is applicable to petitions for habeas corpus relief." *See, e.g.*, *Schall v. Martin*, 467 U.S. 253, 261 n.10 (1984).

If Rule 81 looks to both pre- and post-1938 practice as of the time a court applies Rule 81, then the case for Rule 23's application is strong. As discussed

below, *Ex parte Tadayasu Abo*, 76 F. Supp. 664 (N.D. Cal. 1947), a habeas action brought on behalf of over 4,000 detained Japanese Americans, was a class action; the Ninth Circuit later credited that "these are class suits within Rule 23(a)(3)," *McGrath v. Tadayasu Abo*, 186 F.2d 766, 769 (9th Cir. 1951). And as discussed in Part I, federal courts began certifying habeas classes within two years of Rule 23(b)(2)'s adoption in 1966, and every court of appeals has embraced habeas class actions (whether formally or in practice). Thousands of district court decisions confirm that class procedures are compatible with habeas practice. While some habeas petitions do not lend themselves to class actions—including, most notably, in postconviction cases, which often turn on highly individualized facts—courts have embraced class procedures in cases involving the death penalty, parole practices, immigration detention, conditions of confinement, denial of counsel, and COVID-19 mitigation. *See supra* at 5-9. Significantly, neither Congress nor the Rules Committee have viewed class procedures as incompatible with habeas. As noted, Rules 23 and 81 have been amended eight times since habeas class actions became widespread (most recently in 2007, 2009, and 2018) with no changes to preclude the use of class procedures in habeas. *See* Kovarsky & Rave, *Habeas Class Actions*, at 1518 & n.137. Whatever the pre-1938 history of habeas practice, it is beyond dispute that by the time of these most recent amendments, habeas practice "ha[d] previously conformed" to the normal Rule 23 procedures.

The contrast with *Harris*'s discussion of Rule 33 confirms why class actions conform. In *Harris*, the Court expressed special concern about extending the "broad discovery provisions" that the Federal Rules introduced because "the result of their literal application would be to invoke a procedure which is circuitous, burdensome, and time consuming." *Harris*, 394 U.S. at 296. The Court likewise noted that while Rule 26(b) "provide[s] a great deal of latitude for discovery, … [s]uch a broad-ranging preliminary inquiry is neither necessary nor appropriate in the context of a habeas corpus proceeding." *Id.* at 297. Rule 33's interrogatory process, it concluded, would thus "do violence to the efficient and effective administration of the Great Writ." *Id.*

Class procedures raise none of those concerns. Habeas class actions do not expand the issues for the court's inquiry. To the contrary, they are properly used to centralize and streamline consideration of issues that would otherwise be subject to individual litigation and potentially inconsistent adjudication. In this respect, habeas class actions provide the same opportunity as a single-petitioner habeas action—an opportunity for "careful consideration and plenary processing of … claims including full opportunity for presentation of the relevant facts." *Harris*, 394 U.S. at 298. But where consistent with Rule 23, habeas class actions do so more efficiently. Thus, where *Harris* found that certain discovery rules would do "violence to" the Great

Writ, class procedures do the opposite; they promote the "efficient and effective administration" of the habeas writ. *Id.* at 297.[4]

### C. Courts May Apply Rule 23's Content By Analogy

*Harris* confirms that conformance is just the starting point of what procedures courts may employ in habeas, because federal courts retain independent statutory authority to apply a Federal Rule's content "by analogy to existing rules or otherwise in conformity with judicial usage." *Harris*, 394 U.S. at 299. *Harris* identified two relevant sources of statutory authority: the All Writs Act and 28 U.S.C. § 2243. *See id.* at 292, 299-300. The Court explained that while Rule 33 did not supply habeas procedure of its own force, courts retained authority to "use particular rules by analogy or otherwise, where appropriate." *Id.* at 294. The majority rejected Justice Harlan's dissenting argument that courts' power to borrow rule content analogically was limited, *see id.* at 300 n.7, and even Justice Stewart (in dissent) agreed that courts "should not be inhibited by inflexibly formalized procedural rules" when "carrying out their duty to dispose of habeas corpus applications 'as law and justice require.'" *Id.* at 307 (Stewart, J., dissenting). The Supreme Court reaffirmed the point in *Bracy*, explaining that the All Writs Act gives "federal courts the power to 'fashion

[4] Our discussion of the Rule 81 conformance prong mirrors *Harris*'s holistic, textured analysis, but we do not mean to suggest that pre-1938 habeas practice is incompatible with class action procedures. To the contrary, as discussed in Part III, courts have adjudicated habeas challenges collectively for centuries, and multiparty habeas writs appeared in the English common law as early as the 1500s.

appropriate modes of procedure,' … to dispose of habeas petitions 'as law and justice require.'" 520 U.S. at 904.

That holding accords with how courts have long treated the All Writs Act. The Supreme Court has explained repeatedly that the statute "has served since its inclusion, in substance, in the original Judiciary Act as a 'legislatively approved source of procedural instruments designed to achieve the rational ends of law.'" *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977) (quoting *Harris*, 394 U.S. at 299). To that end, courts "may avail [themselves] of all auxiliary writs as aids in the performance of [their] duties, when the use of such historic aids is calculated in [their] sound judgment to achieve the ends of justice entrusted to [them]." *Id.* at 173 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 273 (1942)).

The All Writs Act's broad grant of authority includes the power to aggregate claims. Most relevant, many of the cases discussed in Part I cited the All Writs Act as providing the authority to certify habeas classes. *See, e.g.*, *Sero*, 506 F.2d at 1125; *Bijeol*, 513 F.2d at 968; *Williams*, 481 F.2d at 361; *Mead*, 464 F.2d at 1112; *Napier*, 542 F.2d at 827 n.2. More recently, in a closely related Alien Enemies Act case, the Supreme Court itself relied on the All Writs Act to issue preliminary relief to a putative habeas class, citing § 1651(a) as the basis of its "power to issue injunctive relief … to preserve [its] jurisdiction over the matter." *AARP v. Trump*, 605 U.S.

91, 97 (2025). In doing so, the Court acknowledged the dissent's dispute of "the availability of classwide relief" and noted that it "d[id] not find its reasoning persuasive." *Id.* at 96. Courts in other contexts, including in the Veterans Court, have likewise concluded that the All Writs Act provides "authority to aggregate cases." *Monk v. Shulkin*, 855 F.3d 1312, 1318-1319 (Fed. Cir. 2017).

None of the contrary arguments persuades. In *AARP*, the dissent disagreed with the Court's decision to issue preliminary classwide relief, arguing that applying a Federal Rule's content by analogy "circumvent[s]" Rule 81's limitations on habeas practice. *See AARP*, 605 U.S. at 109 (Alito, J., dissenting). That reasoning, however, confuses Rule 81's operation. Rule 81(a)(4) specifies habeas procedure that the Federal Rules *must* or *must not* apply—but if procedure sits outside of those two categories, then Rule 81 places no limit on which Federal Rules procedures courts *may* adopt by analogy under independent statutory authority like the All Writs Act. *Harris* was clear on this point, emphasizing that "[t]here is no higher duty of a court, under our constitutional system," than the careful processing and adjudication of habeas petitions, and that "[t]he very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." 394 U.S. at 291-292. The question, *Harris* said and *Bracy* confirmed, is simply whether particular procedures

serve the Court's duty to "dispose of the matter as law and justice require." *Id.* at 299; *Bracy*, 520 U.S. at 904.

As noted, *Harris* also contemplated 28 U.S.C. § 2243 as an independent source of statutory authority. *See Harris*, 394 U.S. at 299 (quoting § 2243). That statute sets out certain procedures in habeas actions not governed under the bespoke rules for postconviction habeas. As relevant here, Congress reserved broad procedural power for courts to "dispose of the matter as law and justice require." 28 U.S.C. § 2243. The Supreme Court has recognized that the statute empowers courts to award stays pending appeal, to invalidate parole conditions, and to order criminal retrials and resentencings, among other things. *See Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (noting that § 2243 authorizes courts to grant stays pending appeal); *Peyton v. Rowe*, 391 U.S. 54, 67 (1968) (same, for invalidating parole conditions); *Irvin v. Dowd*, 366 U.S. 717, 729 (1961) (same, for ordering criminal retrials and resentencings). Other courts have recognized that the power extends to consolidating common issues outside the class action context, *see, e.g.*, *Hill v. Nelson*, 272 F. Supp. 790, 794-795 (N.D. Cal. 1967), and to awarding structural injunctions, *see Watts v. Hadden*, 489 F. Supp. 987, 989-990 (D. Colo. 1980) (invoking § 2243 to order U.S. Parole Commission to "correct the foregoing failures to comply with the mandatory provisions of the Youth Corrections Act").

And as most relevant here, courts have invoked § 2243 to certify class actions in habeas cases. Again, *Adderly v. Wainwright*, 58 F.R.D. 389 (M.D. Fla. 1972), was one of the early cases on this front. There, the court cited *Harris*, § 2243, and the All Writs Act as support for the proposition that "law" and "justice" required certification under those circumstances. *Id.* at 400-401. More recently, and again citing *Harris* and § 2243, the district court in *Malam v. Adducci*, 475 F. Supp. 3d 721 (E.D. Mich. 2020), *amended*, 2020 WL 4818894 (E.D. Mich. Aug. 19, 2020), certified a habeas litigation group "of all noncitizens who are detained in ICE custody" and who were "at heightened risk of severe illness or death if exposed to COVID-19," finding that Rule 23(b)(2)'s framework was appropriate to "dispose of the matter as law and justice require." *Id.* at 743. Here too, the driving force is concern for efficiency and complete remedies. As the Supreme Court explained in *Holiday v. Johnston*, 313 U.S. 342 (1941), Section 2243 allows courts to set aside "comparatively cumbersome and time-consuming procedure" when appropriate. *Id.* at 353.

Underlying that analogical authority is the commonsense conclusion (reflected in cases like *Sero*) that habeas class actions often serve the interests of justice. The parallels between these cases and Rule 23(b)(2) illustrate how, when habeas petitioners challenge a common policy, class treatment facilitates the just and efficient consideration thereof. Rule 23(b)(2) proceeds from the assumption that

collective adjudication and remediation is far more efficient than piecemeal litigation. Moreover, Rule 23(b)(2) was adopted to prevent government actors from evading adverse rulings by complying as to named plaintiffs while continuing to apply the same unlawful policy to everyone else. *See* Fed. R. Civ. P. 23 advisory committee's note to 1966 amendments. A government that detains a class of people under one policy and releases only those who individually obtain relief presents that problem in its starkest form.

Nor does it matter that certain kinds of habeas cases raise individualized fact issues. When there are individualized fact issues that defeat certification, as may prove to be the case in many postconviction cases, courts will not certify a class. *Cf. AARP*, 605 U.S. at 109 (Alito, J., dissenting) (contending that "as a general matter, the class action device is uniquely 'ill-suited' for habeas proceedings, … which often turn on individualized and fact-specific determinations regarding the confinement of a specific prisoner"). The fact that class treatment is sometimes a bad fit does not make it categorically unavailable. It means courts must exercise judgment. The All Writs Act and § 2243 already require them to do so.[5]

---

[5] That courts may consider the content of other Rules in habeas cases is also embedded into the structure of the Federal Rules themselves. Rules 12 of the bespoke postconviction rules for §§ 2254 and 2255—promulgated by the Supreme Court under the Rules Enabling Act—provide that the FRCP "may" apply in habeas proceedings to the extent "not inconsistent with" other applicable rules. *Rules Governing Section 2254 Cases in the United States District Courts and Rules*

## III. HABEAS'S HISTORICAL RECORD REFUTES THE GOVERNMENT'S CLAIM THAT HABEAS IS INHERENTLY INDIVIDUALIZED

The Government contends that "habeas, from its inception, has been an individualized writ." Gov. Br. 45. Five centuries of practice say otherwise. Group habeas petitions were some of the most dynamic and earliest examples of aggregate litigation on record.

Group habeas petitions trace to sixteenth century England, where historians have identified cases in which "dozens" might be named in a single writ, particularly in cases of naval impressment. *See, e.g,* Halliday, *Habeas Corpus: From England to Empire* 322 (2010). Perhaps the most important habeas case in English law fits this mold. *Darnel's Case*—commonly known as the "Five Knights Case"—was a consolidated challenge by five men detained on the Crown's say-so and without any specified offense. 3 Cobbett's St. Tr. 1 (K.B. 1627). *Bushel's Case* used a group habeas petition to free a twelve-member jury that a judge had jailed for contempt. 84 Eng. Rep. 1123 (1670). Those habeas actions predated by decades the earliest

---

*Governing Section 2255 Proceedings for the United States District Courts*, Committee on Rules of Practice and Procedure of the Judicial Conference of the United States (2019), at 7, 13. That would make no sense if Rule 81 barred courts from applying the content of Federal Rules under other authority; they exist precisely because Rule 81 does no such thing. And if analogizing to Federal Rules content is allowed in postconviction cases (the habeas proceedings most constrained by specialized procedure), it is certainly permitted in § 2241 cases like this one, where neither Congress nor the Court saw it necessary to implement any bespoke procedural rules.

uses of *class actions* and *bills of peace* heard by the English courts of equity. *See, e.g.*, *Brown v. Vermuden*, 22 Eng. Rep. 796, 797 (Ch. 1676).

The 1679 Act, which codified a habeas right in England, contemplated collective proceedings, triggering its provisions "whensoever any person *or persons* shall bring any Habeas Corpus." Habeas Corpus Act of 1679, 31 Car. 2 (emphasis added). Early American habeas statutes adopted similar language. *See, e.g.*, Act of Aug. 29, 1842, 5 Stat. 539; Act of Mar. 2, 1833, 4 Stat. 632. Although modern federal habeas provisions (28 U.S.C. §§ 2242, 2243) use the singular, nothing in the history of the habeas statute suggests that its current use of the singular intended to disturb the much longer tradition of aggregating habeas claims.[6]

Since the founding, American courts have adjudicated group habeas petitions across a range of subject matters—including slavery, immigration, military

[6] Notwithstanding the clear, unbroken history of habeas aggregate proceedings (and, over the last six decades, habeas class actions), the Government suggests that habeas class actions are improper because the text of "the federal habeas statute is designed for an individual petitioner." (Gov. Br. 45.) Controlling law says otherwise. "[A] wide variety of federal jurisdictional provisions speak in terms of individual plaintiffs, but class relief has never been thought to be unavailable under them." *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979). Moreover, the Dictionary Act refutes the Government's argument, stating that "[i]n determining the meaning of any [statute], unless the context indicates otherwise—words importing the singular include and apply to several persons, parties, or things." 1 U.S.C. § 1. In *Sero*, the Second Circuit noted that "[it] seems clear … that the change" from the plural to the singular "was intended to be more stylistic than substantive," and that "courts have frequently entertained joint applications by petitioners." 506 F.2d at 1126 n.8.

detention, and labor unrest—precisely because those group petitions resolved common questions that applied to every petitioner.

A few examples illustrate the point. In *Respublica v. Betsey*, 1 U.S. (1 Dall.) 469 (Pa. 1789), for example, the court freed three enslaved persons based on its interpretation of Pennsylvania's Gradual Abolition Act of 1780. *See id.* at 470-472. In *Ex parte D'Olivera*, 7 F. Cas. 853 (C.C.D. Mass. 1813), Justice Story discharged Portuguese sailors after concluding that the Seaman's Act of 1790 did not extend to foreign crews. Even *United States v. The Amistad*, 40 U.S. (15 Pet.) 518 (1841), began as a habeas case. *See* Warrant for Habeas Corpus, *United States v. Cinque* (C.C.D. Conn. Sept. 21, 1839) (Taney, C.J. Circuit Justice), Nat'l Archives Identifier 2641484, https://catalog.archives.gov/id/2641484. The Supreme Court decided it collectively, resolving the claims of over fifty captive Africans in a single proceeding on the grounds that because their enslavement violated Spanish law, they were not "property" subject to return under the treaty with Spain. *See* 40 U.S. at 593. And in *United States ex rel. Standing Bear v. Crook*, 25 F. Cas. 695 (C.C.D. Neb. 1879), the court granted in a single proceeding a collective habeas petition filed by approximately twenty-five Ponca Indians, holding as a matter of law that the petitioners were all "persons" under federal law.

The pattern repeats itself in immigration cases. In *Chy Lung v. Freeman*, 92 U.S. 275 (1876), Chinese women detained aboard a steamship filed a collective

habeas petition challenging California's immigration regime, and the Supreme Court held that the state law was preempted by federal authority over foreign commerce. *See id.* at 277 (noting that "[a]ll of plaintiff's companions were [previously] released from the custody of the sheriff on a writ of *habeas corpus* issued by Mr. Justice Field of this court"); *In re Ah Pwong,* No. 1294, Order Granting Writ of Habeas Corpus at 11 (C.C.D. Cal. Sept. 25, 1874) (Field, Circuit Justice) (granting group petition), Nat'l Archives Identifier No. 311861685, https://catalog.archives.gov/id/311861685. In *In re O'Sullivan*, 31 F. 447 (C.C.S.D.N.Y. 1887), the court granted relief to seventy-two Irish immigrants detained on identical grounds. *See id.* at 448-449. And in *United States v. Sing Tuck*, 194 U.S. 161 (1904), thirty-two Chinese petitioners brought a collective habeas petition challenging their exclusion; the Court addressed their claims together, reversing only on exhaustion grounds without questioning the group format. *See id.* at 169-170.[7]

[7] Mass immigration and other habeas proceedings continued through the turn of the century and beyond—at ports, near border crossings, and in response to new crackdowns in American cities. *See, e.g.*, *In re Tatsu*, 10 Haw. 701 (Haw. 1897) (petition brought on behalf of 348 Japanese immigrants); *In re Ah Ho*, 11 Haw. 654 (Haw. 1899) (petition for over 100 Chinese immigrants); *Ex parte Toscano*, 208 F. 938 (S.D. Cal. 1913) (petition brought by 208 Mexican Federalist Soldiers and followers who fled Mexican Revolution and surrendered to American authorities); *Colyer v. Skeffington*, 265 F. 17 (D. Mass. 1920) (granting relief to twenty people detained during Palmer Raids with the assistance of then-Professor Felix Frankfurter).

The adoption of the Federal Rules in 1938 did not disrupt this practice. In *Ex parte Tadayasu Abo*, 76 F. Supp. 664 (N.D. Cal. 1947), *aff'd in part, rev'd in part sub nom. Barber v. Tadayasu Abo*, 186 F.2d 775 (9th Cir. 1951), two habeas class actions were brought on behalf of over 4,000 Japanese Americans detained for deportation after coerced renunciation of citizenship in wartime internment camps. The district court granted the writs. The Ninth Circuit reversed the judgments as to the adult habeas petitioners but not as to the minors, yet it never questioned the group proceedings. *Barber*, 186 F.2d at 778.[8] Nor did the government, which objected to the scope of the class, ever argue that Rule 81 barred class treatment in habeas, or that group adjudication was categorically improper.[9]

These cases starkly illustrate the error in assertions about the inherent individuation of habeas procedure. Contrary to the Government's suggestion, the

---

[8] Indeed, in a related equity case arising from the same litigation, the Ninth Circuit noted that "these are class suits within Rule 23(a)(3)" and that "equity may enjoin the threatened continuance of the wrong." *McGrath*, 186 F.2d at 769.

[9] In fact, the government stipulated that additional plaintiffs could be joined "individually ... and as representatives of a class" under then-Rule 23(a)(3). Stipulation and Order to Inclusion of Additional Parties as Plaintiffs in Suit at 3-6, *Abo v. Clark*, Cons. No. 25294-S (N.D. Cal. Mar. 4, 1946), Nat'l Archives Identifier No. 498035509, https://catalog.archives.gov/id/498035509. The government's only mention of Rule 81 appeared later in response to the ACLU's objection to its own motion to strike, which generally were not used in habeas cases before 1938. Mem. Br. in Support of Motion to Strike at 16-17, *Abo v. Clark*, Cons. Nos. 25294-95 (N.D. Cal. Jul. 5, 1946), Nat'l Archives Identifier No. 498035600, https://catalog.archives.gov/id/498035600.

history of habeas confirms that when detention has turned on common questions, courts have adjudicated group petitions as a matter of course. Appellees' challenge to a single detention policy on common legal grounds continues that unbroken tradition.

## CONCLUSION

The Court should affirm the district court's decision.

Respectfully submitted.


*<u>/s/ Alan E. Schoenfeld</u>*
NOAH A. LEVINE
ALAN E. SCHOENFELD
JUAN M. RUIZ TORO
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800


June 15, 2026

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B)(i).

1. Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 5,642 words.

2. The brief has been prepared in proportionally spaced typeface using Microsoft Office for Word 365 in 14 point Times New Roman font. As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

*/s/ Alan E. Schoenfeld*
ALAN E. SCHOENFELD

June 15, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of June, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ Alan E. Schoenfeld*
ALAN E. SCHOENFELD