**ORAL ARGUMENT SCHEDULED SEPTEMBER 25, 2026**

No. 26-5074

In the United States Court of Appeals
for the District of Columbia Circuit

**J.G.G.** et al.,

*Plaintiffs–Appellees,*

v.

**DONALD J. TRUMP**, in his official capacity
as President of the United States, et al.,

*Defendants–Appellants.*

On Appeal from a Judgment
of the United States District Court
for the District of Columbia

**DEFENDANTS' REPLY BRIEF**

**Brett A. Shumate**
Assistant Attorney General

**Drew C. Ensign**
Deputy Assistant Attorney
 General

**Tiberius Davis**
Counsel to the Assistant Attorney
 General
Civil Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington DC 20530-0001
(202)-860-8970
tiberius.davis@usdoj.gov

**Anthony Nicastro**
Director
Office of Immigration Litigation

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ..........................1

ARGUMENT ......................................................................................2

    I.     The District Court Lacked Habeas Jurisdiction. ...................2

        A.    The United States never had constructive custody.................................................................................2

            1.    The United States lacked control over Petitioners.......................................................2

            2.    The *Abu Ali* factors cut against constructive custody...............................................................4

            3.    The district court failed to apply the summary judgment standard. ...........................12

        B.    Petitioners Fail to Establish Redressable Collateral Consequences............................................13

    II.    Petitioners' Alternative Due-Process Theory Fails.............17

    III.    The Certification of a Habeas Class Was Improper............24

        A.    The All Writs Act does not permit habeas classes. .....24

        B.    Petitioners Never Establish that Each Class Member Shares Collateral Consequences...................28

    IV.    The District Court's Sweeping Injunction Was Improper.......................................................................30

CONCLUSION ...............................................................................33

i

# TABLE OF AUTHORITIES

Cases

*A.A.R.P. v. Trump,*
605 U.S. 91 (2025) ...................................................................................21

*Abreu v. Superintendent Smithfield SCI,*
971 F.3d 403 (3d Cir. 2020) ...................................................................14

*Abu Ali v. Ashcroft,*
350 F. Supp. 2d 28 (D.D.C. 2004) .......................................................3, 4

*ACLU v. CIA,*
710 F.3d 422 (D.C. Cir. 2013) .................................................................9

*Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.,*
551 F.3d 812 (8th Cir. 2009) ..................................................................24

*Arnold v. Panora,*
593 F.2d 161 (1st Cir. 1979) ..................................................................29

*Bacilio-Sabastian v. Barr,*
980 F.3d 480 (5th Cir. 2020) ..................................................................16

*Braden v. 30th Judicial Circuit Court of Kentucky,*
410 U.S. 484 (1973) ..................................................................................3

*Brandon v. D.C. Bd. of Parole,*
823 F.2d 644 (D.C. Cir. 1987) ...............................................................23

*Brown v. Davenport,*
596 U.S. 118 (2022) ................................................................................19

*Burkey v. Marberry,*
556 F.3d 142 (3d Cir. 2009) ...................................................................14

*al-Najar v. Carter,*
575 U.S. 908 (2015) ..................................................................................4

*Cisco Sys., Inc. v. Doe I,*
2026 WL 1791225 (U.S. June 23, 2026) ................................................12

*Cokeley v. Lockhart*,
951 F.2d 916 (8th Cir. 1991) ........................................................................ 20

*DeFoy v. McCullough*,
393 F.3d 439 (3d Cir. 2005) .......................................................................... 13

*Dep't of Educ. v. Brown*,
600 U.S. 551 (2023) ...................................................................................... 22

*DHS v. Thuraissigiam*,
591 U.S. 103 (2020) ...................................................................................... 23

*Diaz v. Duckworth*,
143 F.3d 345 (7th Cir. 1998) ........................................................................ 13

*Dist. No. 1 v. Liberty Mar. Corp.*,
815 F.3d 834 (D.C. Cir. 2016) ...................................................................... 12

*Duchow v. United States*,
1995 WL 425037 (E.D. La. July 19, 1995) ................................................... 12

*Early v. Blankenship*,
2000 WL 1006646 (8th Cir. 2000) ................................................................ 20

*El-Hadad v. United Arab Emirates*,
496 F.3d 658 (D.C. Cir. 2007) ...................................................................... 32

*Ex parte Risse*,
257 F. 102 (S.D.N.Y. 1919) .......................................................................... 33

*Fernandez v. United States*,
146 S. Ct. 1292 (2026) .................................................................................. 19

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
527 U.S. 308 (1999) ................................................................................ 25, 26

*Gul v. Obama*,
652 F.3d 12 (D.C. Cir. 2011) ................................................................ 4, 14, 15

*Hamidullah, v. Obama*,
2014 WL 1384375 (D.D.C. Apr. 9, 2014) ....................................................... 3

*Harris v. Nelson,*
394 U.S. 286 (1969) ...........................................................................27

*Hecate Energy LLC v. FERC,*
126 F.4th 660 (D.C. Cir. 2025) ........................................................23

*Heck v. Humphrey,*
512 U.S. 477 (1994) .........................................................................19

*Holder v. Humanitarian L. Project,*
561 U.S. 1 (2010) .............................................................................30

*Huisha-Huisha v. Mayorkas,*
27 F.4th 718 (D.C. Cir. 2022) ..........................................................16

*I.M. v. CBP,*
67 F.4th 436 (D.C. Cir. 2023) ............................................................2

*J.G.G. v. Trump,*
147 F.4th 1044 (D.C. Cir. 2025) ........................................... 17, 30, 32

*J.G.G. v. Trump,*
786 F. Supp. 3d 37 (D.D.C. 2025) ................... 11, 13, 17, 18, 19, 21, 23

*J.O.P. v. DHS,*
2025 WL 1431263 (4th Cir. May 19, 2025) .................................22, 31

*Kirkham v. Societe Air France,*
429 F.3d 288 (D.C. Cir. 2005) ..........................................................12

*Kiyemba v. Obama,*
561 F.3d 509 (D.C. Cir. 2009) ............................................................5

*Koki Hirota v. Gen. of the Army MacArthur,*
338 U.S. 197 (1948) ...........................................................................2

*LoBue v. Christopher,*
F.3d 1081 (D.C. Cir. 1996) .........................................................27, 28

*Ludecke v. Watkins,*
335 U.S. 160 (1948) .........................................................................11

*Lujan, v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ..................................................22

*Mack v. City of Chicago,*
    723 F. App'x 374 (7th Cir. 2018)..............................20

*Maqaleh v. Hagel,*
    738 F.3d 312 (D.C. Cir. 2013) ....................................3

*Mullin v. Doe,*
    2026 WL 1825840 (U.S. June 25, 2026) .................9, 11

*Munaf v. Geren,*
    553 U.S. 674 (2008)......................................2, 5, 7, 8

*Noem v. Abrego Garcia,*
    145 S. Ct. 1017 (2025)...............................................31

*Olim v. Wakinekona,*
    461 U.S. 238 (1983)...................................................24

*Perez v. Greiner,*
    296 F.3d 123 (2d Cir. 2002) ....................................15

*Qassim v. Bush,*
    466 F.3d 1073 (D.C. Cir. 2006) ...............................32

*Rel. to Prior Detentions at Guantanamo Bay,*
    700 F. Supp. 2d 119 (D.D.C. 2010) .........................16

*Robert F. Kennedy Hum. Rts. v. Dep't of State,*
    2026 WL 820811 (D.D.C. Mar. 25, 2026) ..................6

*Rumsfeld v. Padilla,*
    542 U.S. 426 (2004)....................................................3

*Shirley v. North Carolina,*
    528 F.2d 819 (4th Cir. 1975).....................................20

*Shoop v. Twyford,*
    596 U.S. 811 (2022)...................................................25

*Spencer v. Kemna,*
523 U.S. 1 (1998)............................................................14

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021)..................................................28, 29

*Trump v. CASA,*
606 U.S. 831 (2025)......................................................29

*Trump v. Hawaii,*
585 U.S. 667 (2018)........................................................9

*Trump v. J.G.G.,*
604 U.S. 670 (2025)........................................ 11, 18, 19, 21

*U.S. ex rel. Sero v. Preiser,*
506 F.2d 1115 (2d Cir. 1974) ........................................24

*United States v. Curtiss-Wright Exp. Corp.,*
299 U.S. 304 (1936)......................................................22

*United States v. Taleb-Jedi,*
566 F. Supp. 2d 157 (E.D.N.Y. 2008)............................17

*Vallario v. Vandehey,*
554 F.3d 1259 (10th Cir. 2009)....................................30

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011)......................................................29

*Wash. All. of Tech. Workers v. DHS,*
50 F.4th 164 (D.C. Cir. 2022)......................................12

*Whitmore v. Arkansas,*
495 U.S. 149 (1990)......................................................27

*Williams v. Consovoy,*
453 F.3d 173 (3d Cir. 2006) .........................................21

*Wilson v. Midland County,*
116 F.4th 384 (5th Cir. 2024) ......................................21

*World-Wide Volkswagen Corp. v. Woodson,*
   444 U.S. 286 (1980).............................................................................19

*Wye Oak Tech., Inc. v. Republic of Iraq,*
   24 F.4th 686 (D.C. Cir. 2022)..............................................................9

Statutes

8 U.S.C. §1182(a)......................................................................... 14, 16

8 U.S.C. §1651(a)...............................................................................24

Rules

Fed. R. App. P. 32(a)...........................................................................2

Fed. R. App. P. 32(f) ...........................................................................2

Fed.R.Civ.P. 18..................................................................................26

Regulations

8 C.F.R. § 208.17(b)(1)......................................................................17

# GLOSSARY

| | |
|---|---|
| AEA | Alien Enemies Act |
| CECOT | Centro de Confinamiento del Terrorismo (the Terrorism Confinement Center in El Salvador) |
| FTO | Foreign Terrorist Organization |
| TdA | Tren de Argua |
| Br. | Defendants' Opening Brief |
| Resp. | Petitioners' Opening Brief |

## INTRODUCTION AND SUMMARY OF ARGUMENT

The United States never had control over a foreign prison in El Salvador. And Petitioners have ostensibly been free in their home country (or a third country they voluntarily traveled to) for nearly a year. That defeats habeas jurisdiction. Yet Petitioners want courts to declare that sovereign nations are mere puppets of the United States and all deportees suffer collateral consequences. That is a radical position that would massively expand jurisdiction over foreign prisons and aliens abroad; seriously disrupt foreign affairs; and make it impossible for the Executive to speak with one voice on the world stage.

The law and record do not support constructive custody even under Petitioners' preferred test: El Salvador controlled Petitioners' detention and released Petitioners. Moreover, the alleged collateral consequences are speculative and unlikely to be redressed by a hearing. The ahistorical habeas class action also fails. Petitioners' alternative due-process claim is similarly flawed; it too sounds in habeas and lacks redressability. Regardless, the district court's sweeping injunction—which requires the United States to either return dangerous aliens or provide them with

remote hearings—is inequitable and imperils foreign affairs. This Court should reverse.

## ARGUMENT

### I. The District Court Lacked Habeas Jurisdiction.

The United States never had constructive custody over Petitioners held in a Salvadoran prison. The United States certainly does not have custody now that Petitioners are free in their home country or a third country they voluntarily chose to travel to. Yet only after El Salvador transferred Petitioners to Venezuela did the district court reverse itself and find constructive custody. That was erroneous and requires reversal and judgment for Defendants.

#### A. The United States never had constructive custody.

##### 1. The United States lacked control over Petitioners.

In deciding whether constructive custody exists, the only question is whether the United States has "the power to produce" the class members. *Munaf v. Geren*, 553 U.S. 674, 686 (2008). That understanding is grounded in the very meaning of habeas corpus: "an order directing a custodian to produce (habeas) a prisoner's body (corpus)." *I.M. v. CBP*, 67 F.4th 436, 440–41 (D.C. Cir. 2023). While the United States can work

through an agent, an agent is "subject to the principal's control." Restatement (Third) of Agency §1.01, cmts. (d), (f)(1) (2006).

That control must exist with respect to the habeas petitioner's custody—not over a foreign nation's affairs more broadly. *Contra* Resp.13. But here, the United States lacked control over El Salvador regarding Petitioners' detention, so it lacked constructive custody. *See Koki Hirota v. Gen. of the Army MacArthur*, 338 U.S. 197, 198 (1948) (per curiam).

Petitioners suggest that a malleable multifactor balancing test, drawn from a single nonbinding district court case, dictates whether constructive custody exists. Resp.12-13 (citing *Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28, 68 (D.D.C. 2004)). But the cases Petitioners cite for support provide no basis for applying that test. The Supreme Court has explained that *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 498-99 (1973), stands only for the proposition that a petitioner challenging a detainer from another state "may name as respondent the entity or person *who exercises legal control with respect to the challenged 'custody.'" Rumsfeld v. Padilla*, 542 U.S. 426, 438 (2004) (emphasis added and citation omitted). As explained, the United States *lacked* legal

control with respect to Petitioners' detention in El Salvador and imposed no separate restraint being challenged. Br.30.

As for *Maqaleh v. Hagel*, 738 F.3d 312, 323 (D.C. Cir. 2013), (Resp.14), this Court merely remanded for the district court to consider new evidence regarding American control of the petitioners' custody in Pakistan. And on remand, the district court found that a government declaration was sufficient to demonstrate the United States lacked control. *Hamidullah, v. Obama*, 2014 WL 1384375, at *1 (D.D.C. Apr. 9, 2014). Because "petitioners were transferred from custody of the United States to custody of other nations," the Supreme Court vacated the case as moot, demonstrating that control is key to habeas jurisdiction. *al-Najar v. Carter*, 575 U.S. 908 (2015). Petitioners' cited cases fail to support the additional factors in their favored test—all turn on agency and control, consistent with the historical underpinnings of habeas. Resp.15 n.2. Since the United States lacked control over Petitioners or their custodians while detained by El Salvador, there was no constructive custody.

## 2. The *Abu Ali* factors cut against constructive custody.

Even accepting Petitioners' reliance on the *Abu Ali* factors, the United States lacked constructive custody.

**a. Control.** Control exists when an official can order a detainee "released upon nothing more than a request." *Abu Ali*, 350 F. Supp. 2d at 68. That is dispositive here. As multiple declarations from senior diplomats make clear, El Salvador, not the United States, had sole control—and chose to release Petitioners. JA182-83 ¶¶9-10; JA310 ¶4; JA315-17 ¶¶2-4. That requires judgment for Defendants. *See Gul v. Obama*, 652 F.3d 12, 17-18 (D.C. Cir. 2011) (crediting declaration that United States transferred custody to Afghanistan and Sudan); *Kiyemba v. Obama*, 561 F.3d 509, 515 (D.C. Cir. 2009) (similar). Fundamentally, courts should not be parsing non-binding diplomatic notes or posts from foreign leaders to conclude otherwise. Doing so "undermine[s] the Government's ability to speak with one voice in this area." *Munaf*, 553 U.S. at 702.

Petitioners attempt to distinguish those declarations from those submitted in other cases. Resp.24-27. But the Government's declarations do not have to be identical to those in other cases to convey the same

point; there is no "magic words" requirement. Ambassador Kozak said the "detention and ultimate disposition of" those detained in CECOT was up to El Salvador. JA182-83 ¶¶9-10; JA310 ¶ 4 (same). That statement did not simply convey that "the detention was consistent with Salvadoran law," Resp.25, it explained which sovereign held "legal authority" and thus control (El Salvador, not the United States), JA182 ¶9. If El Salvador could release or hold Petitioners or not regardless of the United States' desires, then the United States lacked control. The declarants also made clear their declarations were based on personal knowledge and experience. JA182. And the government's additional declarations, while not necessary for this Court to agree with the government that the United States lacked constructive custody, are certainly relevant and support that conclusion. JA310-17.

Petitioners' reliance on the diplomatic notes fares no better. Resp.21-22. First, the notes' formality cannot overcome their nonbinding nature (which the district court has confirmed). *See Robert F. Kennedy Hum. Rts. v. Dep't of State*, 2026 WL 820811, at *14-15 (D.D.C. Mar. 25, 2026) (arrangement here was non-binding and federal law allowed for removals, so not redressable). The nonbinding nature of the notes

undermines their relevance with respect to custody and the importance of the disposition period.

In any event, the one-year disposition period existed only to allow for renegotiations. Br.28. The notes do not suggest that the United States retained control over the Salvadoran detainees; rather contemporaneous notes demonstrate that both countries understood El Salvador maintained sole control. JA226, JA469-70 ¶5; JA463-67.

Regardless, the one-year period is irrelevant because El Salvador did transfer class members to Venezuela on its own initiative. JA312-13 ¶¶8-9. Petitioners focus on the United States' role as an intermediary to baselessly argue that the United States orchestrated the transfer. Resp.29-30. But they ignore that Salvadoran President Bukele publicly proposed a transfer to Maduro months prior. JA311 ¶5; JA182 ¶9. And President Bukele took credit for the arrangement. JA312-13 ¶¶8-9; CIDH Video 35:10. Neither the district court nor Petitioners have evidence nor the authority to psychoanalyze El Salvador's diplomatic decisions and "second guess" what it got out of the deal. *Munaf*, 553 U.S. at 702. El Salvador's independent decision to transfer custody demonstrates that it

exercised control over its detainees, even within the one-year disposition period.

The United States' difficulty in procuring the return of Kilmar Abrego-Garcia and another class member further demonstrates that El Salvador maintained control of its detainees. JA182-83 ¶¶9-11; JA315-17 ¶¶2–5; JA311-12 ¶7. Petitioners say this proves the United States had control because the President in an interview said he could get Abrego back and eventually did. Resp.17, 31. But this ignores that it took months and an indictment, as President Bukele said. @nayibbukele, (June 6, 2025), https://x.com/i/status/1931084729840800096; JA316-18 (Declaration of Secretary Rubio saying "the decision to release him was not up to us; it was El Salvador's decision alone to make"); SA014-16. Taken together, the declarations, notes, and reality on the ground prove that El Salvador had sole control over the detention and release of Petitioners.

**b. Behest, Indifference.** Petitioners largely collapse El Salvador's alleged indifference and whether it held class members at the United States' behest. Resp.17. Much of the same evidence showing a lack of

control demonstrates that these factors cut against custody. *Supra* pp.4-7.

Petitioners question why El Salvador would accept TdA members, Resp.17-18, but the record shows that it was in exchange for MS-13 members, JA226; JA469-71 ¶¶4-7. Further, what matters is not why El Salvador *accepted* Petitioners, but why El Salvador *detained* them. There is no evidence that El Salvador detained Petitioners only at the United States' behest or that it was indifferent to gang members running free in its country.

In any event, Petitioners' argument on this front improperly asks this Court to "undermine the Government's ability to speak with one voice" as to foreign relations, *Munaf*, 553 U.S. at 702, by scrutinizing the motivations of a foreign nation and its prisons. Worse, their only support for that request is a case that made its assessments based on court filings, not hearsay and tweets. Resp.23 (citing *Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 697 (D.C. Cir. 2022)).

In speculating about El Salvador's motives, Petitioners' suggest that the United States used a grant for "law enforcement and anticrime needs" as payment to detain class members. Resp.19. But Petitioners

have no evidence how it was used. JA222-25, JA469-71 ¶¶4-7. Petitioners' reliance on discovery responses offers little additional support, Resp.19, as they reflect how the funds *could* be used while other responses make clear that the detention decision was El Salvador's alone. SA012-13.

Petitioners further rely on various public statements to support their behest-of-the-United-States theory, but to no avail. Resp.20-21 (citing *ACLU v. CIA*, 710 F.3d 422, 429 (D.C. Cir. 2013) (Defendants conceded speech was "official acknowledgment")). Such public political statements are of limited value. *See Trump v. Hawaii*, 585 U.S. 667, 701–02 (2018); *Mullin v. Doe*, 2026 WL 1825840, at *11-12 (U.S. June 25, 2026) (minimizing such statements as evidence of intent). Even so, they do not clearly support Petitioners' assessment; then-Secretary Noem, for example, said aliens "could," not will, end up in CECOT. JA165; JA247. Afterall, acceptance is contingent on El Salvador's sovereign decision. Regardless, what matters is what actually happened following that statement: no one else was detained in CECOT and El Salvador released Petitioners.

Petitioners do not contest that the modified ambiguous U.N. document by an unknown author in a subsidiary working group is inadmissible hearsay. Resp.18-19. Notably, that document is undermined by official diplomatic notes at the time and testimony before an international body that make clear El Salvador had sole control. JA463-67; JA469-70 ¶¶4-5, ¶11; CIDH Video. Petitioners attempt to brush aside the contrary evidence because the notes and testimony occurred after they filed their complaint and are not under oath (which is true of their U.N. document). Resp.19 n.6, 23 n.8. But their complaint is not a magic line, as relevant events continued to happen, including El Salvador's transfer of Petitioners on July 18, 2025. JA312-13 ¶¶8-9.

Finally, Petitioners' improper reliance on hearsay from CECOT guards fails to demonstrate that El Salvador detained them at the United States' behest or with indifference to their status. Resp.22-23; Br.35. Petitioners claim the statements are not hearsay because they reflect El Salvador's intent. *Id.* Not so: they are presenting the declarations to establish that the United States purportedly had control. Regardless, they ignore that these guards lack knowledge to speak on behalf of *any* sovereign's intentions. *Id.* As the district court previously said, El

Salvador chose to detain Petitioners "for reasons far outside the ken of a federal district court," not at the behest of the United States. *J.G.G. v. Trump*, 786 F. Supp. 3d 37, 57 (D.D.C. 2025).

**c. Evasion.** As explained before, the Government did not try to evade review. Br.33. Petitioners' only evidence to the contrary is (again) tweets to the effect that the AEA "largely 'preclude[s] judicial review,'" *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quoting *Ludecke v. Watkins*, 335 U.S. 160, 163-64 (1948)), and the so-called "whistleblower report" full of privileged information and inaccuracies that was not under oath. Resp.27-28. Even so, as the district court noted, the *detention* must be to evade review for constructive custody purposes, not the removal. JA340-41. As this appeal shows, any detention makes review only *more* likely.

***

The United States lacked control over Petitioners detained in El Salvador. That is dispositive. To hold otherwise would expand jurisdiction over foreign prisons. In effect, Petitioners want this Court to declare that the United States acted as a "puppet" master controlling El Salvador. *Duchow v. United States*, 1995 WL 425037, at *3 (E.D. La. July 19, 1995) (similar habeas case). Such a ruling invites "unwarranted

12

judicial interference in the conduct of foreign policy." *Cisco Sys., Inc. v. Doe I*, 2026 WL 1791225, at \*6 (U.S. June 23, 2026) (quotation omitted).

### 3. The district court failed to apply the summary judgment standard.

The district court also erroneously applied the Rule 12(b)(1) standard and construed all facts against the Government. JA328. This Court has consistently held that "[w]e review *de novo* the district court's grant of summary judgment," "including its determinations about the plaintiff's standing." *Wash. All. of Tech. Workers v. DHS*, 50 F.4th 164, 175 (D.C. Cir. 2022). Petitioners attempt to defend the district court's factfinding based on inapposite cases. Resp.32 (citing *Dist. No. 1 v. Liberty Mar. Corp.*, 815 F.3d 834, 839, 842 (D.C. Cir. 2016) (reciting the summary judgment standard and never mentioning 12(b)(1)); *Kirkham v. Societe Air France*, 429 F.3d 288, 291 (D.C. Cir. 2005) (abrogated opinion construing summary judgment motion as 12(b)(1) motion)).

Despite the district court's express factfinding (JA328-29), Petitioners disclaim any material dispute on the ground that the district court simply reinterpreted the notes. Resp.33. Petitioners have no response to all the other evidence the district court construed against the Government despite previously finding no constructive custody when it

*could* engage in fact finding. *See J.G.G.*, 786 F. Supp. 3d at 57; Br.37. Using the proper standard, Petitioners have failed to establish constructive custody even in the light most favorable to them. Rather, there is a material dispute of facts that precludes judgment.

**B.** **Petitioners Fail to Establish Redressable Collateral Consequences.**

At this stage, everyone agrees that Petitioners are no longer in custody. So only collateral consequences can prevent their claims from being moot. Collateral consequences are a "narrow exception" and any presumption of consequences does not apply. *DeFoy v. McCullough,* 393 F.3d 439, 442 n.3 (3d Cir. 2005); *see also Gul*, 652 F.3d at 17 (presumption does not apply to former detainees held by foreign country aboard); *Diaz v. Duckworth*, 143 F.3d 345, 347 (7th Cir. 1998) (rejecting any presumption for "deportees"). Collateral consequences must be "concrete" and "redress[able]." *Gul*, 652 F.3d at 17-18.

To start, Petitioners' alleged collateral consequences of entry restrictions and property seizures are "too speculative." *Gul*, 652 F.3d at 18 (similar restrictions for "enemy combatants"). Petitioners have the "burden to demonstrate that collateral consequences exist," *Burkey v. Marberry*, 556 F.3d 142, 150 (3d Cir. 2009), and are not just a

"possibility," *Spencer v. Kemna*, 523 U.S. 1, 14 (1998). Yet Petitioners provide zero evidence that property or asset seizures, other than arrest-related seizures, have or are likely to happen. *See Gul*, 652 F.3d at 20 (recapture is legally possible but "speculative"). This demonstrates the problem with habeas class relief where jurisdiction is based on collateral consequences.

Petitioners cite nonbinding cases where entry restrictions sufficed. Resp.34. But under that rule, almost every deportee would have collateral consequences, s*ee* 8 U.S.C. §1182(a)(9), which is hardly a "narrow exception." *DeFoy,* 393 F.3d at 442 n.3. Regardless, those cases only apply where Petitioners demonstrate a "'likelihood' that a favorable decision would redress the injury or wrong" rather than "a possibility." *Abreu v. Superintendent Smithfield SCI*, 971 F.3d 403, 406 (3d Cir. 2020) (distinguishing some of Petitioners' cases because separate barriers existed); *see also Gul*, 652 F.3d at 19 (similar); *Perez v. Greiner*, 296 F.3d 123, 126 (2d Cir. 2002) (similar).

Petitioners have not shown their alleged consequences would likely be redressed by the remedy here, which is simply a hearing. Any redressability would require that the class member (1) prevails in his

hearing; and (2) lacks *other* restrictions on entering and living in America. *See Gul*, 652 F.3d at 19-20 (other statutory restrictions meant not redressable). At bottom, there is a disconnect between the AEA designations Petitioners challenge, the custody allegedly creating jurisdiction, the consequences complained of, and the remedy imposed. For example, Aliens can be designated under the AEA abroad and face the same consequences. Further, the AEA proclamation can be revoked and the class members would still face other restrictions, such as FTO designations. That causal mismatch defeats jurisdiction.

Indeed, the class members have no right to be in the United States, other admissibility bars may apply; several face criminal investigations and convictions; some would be subject to expedited removal; and at least one has a final order of removal under Title 8. *See* Br.39-40 (citing JA456 ¶12, 8 U.S.C. §1182(a)(3)-(4)); *Gul*, 652 F.3d at 19-20 (other bars on entry preclude redress); *In re Petitioners Seeking Habeas Corpus Relief in Rel. to Prior Detentions at Guantanamo Bay*, 700 F. Supp. 2d 119, 135 (D.D.C. 2010) (finding courts cannot redress some of these bars). Petitioners barely contest these other barriers, instead arguing it is speculative that the bars would apply and class members could receive asylum (a

*discretionary* form of relief). Resp.37; JA409 (counsel agreeing Petitioners would likely be detained and removed absent asylum).[1] But Petitioners bear the burden of showing the consequence is "'likely to be redressed," not a mere chance. *Guantanamo Bay*, 700 F. Supp. at 129.

Petitioners try to claim the availability of discretionary relief suffices. Resp.38. Not so. *See Bacilio-Sabastian v. Barr*, 980 F.3d 480, 483 (5th Cir. 2020) (discretionary benefits do not create collateral consequences). In any event, none of their cases involve asylum, where the Executive can evince an intent to categorically deny asylum. *See Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 730–31 (D.C. Cir. 2022). So even if members win their hearings and apply, that is not redress because they will not receive asylum. Petitioners' further claim that they might receive CAT or withholding is speculative. Resp.38. In any event, such relief would only preclude their removal to certain countries. *See, e.g.,* 8 C.F.R. § 208.17(b)(1).

---

[1] Petitioners incorporate articles quoting anonymous individuals claiming they were refugees, yet tellingly do not rely on any class members' representations. Resp.38. While some may have been paroled or entered legally, that does not mean they had a right to remain legally. These sources also note that many have criminal records.

Petitioners would also be barred from entry *and* discretionary relief because they are designated FTO members. Br.42; *J.G.G. v. Trump*, 147 F.4th 1044, 1055 (D.C. Cir. 2025) (Katsas, J., concurring). Petitioners protest that if they prove they are not TdA members, that designation falls away too. Resp.36. But FTO designations have separate legal standards with limited review, so that does not necessarily follow. Br.41-42; *United States v. Taleb-Jedi*, 566 F. Supp. 2d 157, 170 (E.D.N.Y. 2008) (explaining limited ability to contest). All of these complications show that redress is not likely or at a minimum should not be afforded classwide.

## II. Petitioners' Alternative Due-Process Theory Fails.

The district court previously found no constructive custody, yet granted a preliminary injunction requiring Defendants to "facilitate" habeas based on a novel standalone due process theory. *J.G.G.*, 786 F. Supp. 3d at 52. Petitioners now claim this is an alternative ground of affirmance and some responses were waived. Resp.40. But the district court did not rely on that claim, so nothing was waived. The district court simply noted that "if habeas were not" available, its habeas ruling should not *preclude* the alternative equity theory. JA330. Indeed, the court

18

previously said these theories were "mutually exclusive." *J.G.G.*, 786 F. Supp. 3d at 52. Since the district court did not analyze the merits, certify a class, nor tailor a remedy based on this alternative claim, at most this Court could remand. Regardless, this Court should reject this theory for the reasons previously briefed. *See J.G.G. v. Trump*, No. 25-5217, (D.C. Cir.) Doc.2120092.

**1.** To start, Petitioners' due-process claim sounds in habeas. The Supreme Court made that clear in this very case. Their "claims for relief 'necessarily imply the invalidity' of their confinement and removal under the AEA," so "their claims fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *J.G.G.*, 604 U.S. at 672. The Court vacated a TRO that was partly premised on a due-process claim that Petitioners had not received adequate pre-removal notice. *Id.*; ECF 1 ¶¶101-04; ECF 3-2, at 16-17; ECF 53, at 24.

Petitioners' due-process claim is that their removals were invalid because they were not provided sufficient process to dispute its basis. *J.G.G.*, 786 F. Supp. 3d at 82. If a removal violated due process, even for "inadequate" notice, it is "void." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). The district court acknowledged this

when it said that the violation requires "restoration of the status quo ante." *J.G.G.*, 786 F. Supp. 3d at 64. That remedy requires undoing the removals, thus "necessarily imply[ing]" their "invalidity." *J.G.G.*, 604 U.S. at 672; *see also Brown v. Davenport,* 596 U.S. 118, 128–29 (2022) ("habeas was no less than 'the instrument by which due process could be insisted upon'"). That sounds in habeas.

Indeed, this case bears striking similarities to *Heck v. Humphrey*, 512 U.S. 477 (1994). There, the petitioner, imprisoned for manslaughter, sought damages for alleged due-process violations. *Id.* at 479. The Supreme Court held that, even though the petitioner had not sought release, his claim sounded in habeas because it "would necessarily imply the invalidity of his conviction or sentence." *Id.* at 486-87; *see Fernandez v. United States*, 146 S. Ct. 1292, 1305 (2026).

Petitioners claim the Government could return Petitioners, provide adequate process, and then ultimately remove them again. Resp.42. But that is often true of convictions vacated on due-process grounds. *See Cokeley v. Lockhart*, 951 F.2d 916, 921 (8th Cir. 1991) (granting habeas and vacating conviction because of lack of notice, remanding, and noting potential for retrial); *Shirley v. North Carolina*, 528 F.2d 819, 820 (4th

Cir. 1975) (similar). Such due-process claims are core habeas and cannot be brought through standalone equitable challenges. *See Mack v. City of Chicago*, 723 F. App'x 374, 376 (7th Cir. 2018) ("due-process claim based on an unfair criminal trial necessarily would impugn the validity of his conviction"). So too for challenges to a lack of notice before a hearing. *See Early v. Blankenship*, 2000 WL 1006646 (8th Cir. 2000) (challenge to notice of disciplinary hearing "would necessarily imply the invalidity of [the] disciplinary result" and thus must be brought in habeas). Petitioners' due-process claim strikes at the heart of their removals' validity, and packaging the claim as notice-related does nothing to change that fact.

Nor are Petitioners aided by dicta "skeptical of the self-defeating notion that the right to the *notice* necessary to actually seek habeas relief must *itself* be vindicated through individual habeas petitions, somehow by plaintiffs who have not received notice." *A.A.R.P. v. Trump*, 605 U.S. 91, 98 (2025) (per curiam) (quotation omitted). The *A.A.R.P.* majority was responding to the dissent's arguments regarding *classwide relief*—not suggesting such claims could proceed outside of habeas. *Id.* Indeed, that case *was* a habeas action, filed in the correct venue. *Id. A.A.R.P.* does not

undermine the Supreme Court's ruling in *this* case that challenges to AEA detention or removal must proceed in habeas.

Petitioners seem to argue that absent habeas, they must have some other cause of action like the Administrative Procedure Act. Resp.44. But they did not rely on APA claims below. *J.G.G.*, 786 F. Supp. 3d at 61; ECF 177-1 at 9. In any event, similar arguments might be made in many *Heck* cases, but the claims still sound in habeas. *See Wilson v. Midland County*, 116 F.4th 384, 400 (5th Cir. 2024) (en banc) (release mooting habeas claim does not allow damages claim); *Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) (same). So Petitioners' case rises and falls on habeas jurisdiction.

**2.** The equitable due-process theory also fails for a related reason: An injunction cannot be used to "facilitate" filing habeas claims. That is internally inconsistent. Defendants cannot "facilitate" habeas if Petitioners are not in United States custody. And if Petitioners *were* in custody, then they could bring a habeas claim. Nor can a court force the United States to regain custody of Petitioners, which would require diplomatic action by the Executive. *See United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936); *J.O.P. v. DHS*, 2025 WL 1431263,

22

at *14-15 (4th Cir. May 19, 2025) (Richardson, J., dissenting) ("[H]owever far 'facilitate' goes, it cannot encompass an order requiring specific diplomatic communication from the Executive Branch.").

**3.** With no custody comes no remedy. It is not "'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023). When the "existence of one or more of the essential elements of standing 'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict,'" Petitioners bear an especially heavy burden to prove "redressability of injury." *Lujan, v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Mere "guesswork as to how independent decisionmakers will exercise their judgment" is insufficient. *Hecate Energy LLC v. FERC*, 126 F.4th 660, 665-66 (D.C. Cir. 2025).

As explained above, the only way to "facilitate" habeas relief here would be for the United States to regain custody. But most of the class members who wish to return are in Venezuela. JA456 ¶ 12. Redressability is thus wholly speculative and dependent on a foreign sovereign's

conduct, which cannot satisfy Article III. *Hecate Energy*, 126 F.4th at 665-66. Given fluid international dynamics, Petitioners cannot overcome significant doubts as to redressability, prior assurances notwithstanding. *Id.*

In the end, Petitioners' only injury traceable to the United States is a purely *past* one: that they were removed without adequate notice or an opportunity to file habeas. *See J.G.G.*, 786 F. Supp. 3d at 66. That is not an ongoing or imminent injury that can justify injunctive relief.

4.     Finally, Petitioners have not explained what protected interest they have for the remedy they now seek. Illegal aliens have no protected interest in remaining in the country. *DHS v. Thuraissigiam*, 591 U.S. 103, 138 (2020). And "an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Brandon v. D.C. Bd. of Parole*, 823 F.2d 644, 648 (D.C. Cir. 1987) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250 n.12 (1983)). For Petitioners to obtain the *process* interest they now ask for, the United States must take them back into custody. Resp.44. The remedy for a due-process violation of a liberty interest cannot be to re-detain a person—free in their own country—just to seek further process.

**III. The Certification of a Habeas Class Was Improper.**

**A. The All Writs Act does not permit habeas classes.**

Everyone seems to agree that "Rule 23 do[es] not apply to habeas corpus proceedings." *U.S. ex rel. Sero v. Preiser*, 506 F.2d 1115, 1125 (2d Cir. 1974) (relying on All Writs Act instead). Thus, Petitioners and the district court rely largely on the All Writs Act to justify certifying a habeas class. Resp.46-47; JA348-52.

But the All Writs Act does not permit habeas class actions. Instead, the All Writs Act permits courts to use (1) certain "procedural tools" analogous to "various historic common-law writs" (2) only "in aid of" the issuing court's jurisdiction." *Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*, 551 F.3d 812, 820 (8th Cir. 2009) (quoting 28 U.S.C. §1651(a)). Habeas class actions do neither.

First, the All Writs Act authorizes federal courts to issue extraordinary writs "'necessary or appropriate in aid of' a federal habeas court's jurisdiction, as all orders issued under the All Writs Act *must* be." *Shoop v. Twyford*, 596 U.S. 811, 821 (2022) (emphasis added). The district court found this necessary to preserve jurisdiction over the class because the Government could unilaterally revoke designations and moot

out individuals. JA350. That is doubly wrong. First, it wrongly assumes that the court had jurisdiction to preserve. Second, it turns on speculation as to future government action—action the government could take regardless of class certification. Plaintiffs' non-sequitur that certification is not expanding jurisdiction fails to defend certification as aiding jurisdiction. Resp.47.

Next, the All Writs Act permits only procedural tools analogous to common law writs and historical practice. *See Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318-19, 326 n.8 (1999) (All Writs Act limited to that "traditionally accorded by courts of equity"). And "[i]n every habeas case, the court must be guided by the general principles underlying [the Supreme Court's] habeas corpus jurisprudence." *Shoop*, 596 U.S. at 821 (citation omitted). Yet there is no history or habeas statute to support habeas classes. Petitioners do not dispute the lack of habeas class actions before the latter half of the 20th century, instead attempting to analogize habeas classes to joinder. Resp.47.[2] But expansive rules of joinder are also a 20th century

_____

[2] It is telling that the best historical evidence Petitioners can muster is a single state court decision involving several slaves' individual habeas

26

development. Fed.R.Civ.P. 18 advisory committee note (1937) ("[r]ecent development").

The historical core of habeas also belies the existence of class actions. The singular-noun statutes track the historical nature of habeas, which was "directed to the person detaining another and commanding him to produce the body of the prisoner" to explain the basis for his detention. 3 William Blackstone, *Commentaries on the Laws of England* 131–32 (1768); Br.45-49; *contra* Resp.47. That is by definition individualized.

Given the historical weight, Petitioners pivot to rejecting that history is relevant outside of the remedial sphere. Resp.46-47. But *Grupo* interpreted the Judiciary Act broadly and applied it to the All Writs Act. 527 U.S. at 318-19, 326 n.8. The "Writs" must be historically based and provide some redress. Class actions are not analogous to a historical writ or habeas practices. And the Act cannot "circumvent statutory requirements or otherwise binding procedural rules." *Shoop,* 596 U.S. at 820 (rejecting reliance on the Act to permit evidence gathering).

claims and a law review article discussing a post-Civil War district court opinion. Resp.47 n.18.

Plaintiffs' own case, *Harris v. Nelson*, also rejected using the Act to allow for interrogatories as contrary to "the history of habeas corpus procedure." 394 U.S. 286, 296 (1969). Here, using class actions circumvents the historical and statutory procedures for "next friend" petitions, which is designed to help people who cannot petition on their own. *Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990). Allowing class actions would eviscerate that process without imposing its protections. *Id.* Petitioners claim this is irrelevant and point to Rule 23. Resp.48. But again, Rule 23 does not apply to habeas proceedings. Petitioners' theory lacks any limiting principle for new procedures under the All Writs Act.

Petitioners point to several contemporary cases. Resp.46. None grappled with the required jurisdictional or historical analysis. As explained, in *LoBue v. Christopher*, this Court vacated judgment because the claim was properly brought in another district. 82 F.3d 1081 (D.C. Cir. 1996). Only in dicta did the Court opine that a habeas class action might be brought elsewhere, as was true of most other cases. *Id.*; Br.53 n.14. No binding case law supports Plaintiffs.[3]

---

[3] Petitioners request class certification on their alternative equitable theory. Resp.45. But the district court did not certify such a class and Petitioners do not meet their burden here.

## B. Petitioners Never Establish that Each Class Member Shares Collateral Consequences.

Even assuming that habeas class actions are permissible, "[e]very class member must have Article III standing" because "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *TransUnion LLC v. Ramirez,* 594 U.S. 413, 431 (2021). Petitioners say *RAICES v. Mullin,* 174 F.4th 81, 115 (D.C. Cir. 2026) holds that not every class member must have standing to be eligible for class wide relief. Resp.49. That language is arguably dicta since the Court held that the redefined class ensured each member of the class had standing, see *id.*, and would in all events contravene *TransUnion.*

Even if each member does not need standing, the lack of collateral consequences for every member demonstrates there is no commonality. Br.56. Petitioners even admit that "factual differences among the class may arise downstream." Resp.50. For this same reason, no petitioner can properly represent the class. *See Arnold v. Panora,* 593 F.2d 161, 164 n. 9 (1st Cir. 1979) (plaintiff was not representative of class because his revocation period did not qualify as a collateral consequence compared to others).

Petitioners argue that any individual jurisdictional issues can be figured out after the class is established. Resp.50. But this gets things backwards. If classwide relief issues, but the district court later determines that individual class members lack redressable collateral consequences, the district court will have effectively granted relief without jurisdiction. *Trump v. CASA*, 606 U.S. 831 (2025) and *TransUnion*, 594 U.S. at 431 forecloses that result.[4]

Similarly, Rule 23(b)(2) requires Petitioners to show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). The district court attempted to sidestep this issue by claiming that the relief Petitioners sought is simply the ability to challenge their designation under the AEA. JA358. But this once again ignores that providing hearings is not likely to redress each class member's collateral consequences, which is required

---

[4] Petitioners argue any consequences are downstream of their TdA designation, but that is wrong, as explained. Br.55-56; *supra* p.17.

for jurisdiction. *See Vallario v. Vandehey*, 554 F.3d 1259, 1268 (10th Cir. 2009). Thus, the district court could not issue classwide relief.

## IV. The District Court's Sweeping Injunction Was Improper.

The district court's remedy has once again intruded on sensitive areas of foreign affairs by requiring the United States to return dangerous aliens from multiple countries, provide updates about an evolving diplomatic situation, and provide remote hearings with serious legal and practical issues. Returning innumerable FTO members from various foreign countries raises serious foreign affairs and national security issues. *See J.G.G.*, 147 F.4th at 1059–60 (Katsas, J., concurring). As Secretary Rubio made clear, that is doubly true because most of them are in Venezuela, a nation in flux requiring top-level diplomacy. JA370.

Much like the district court, Petitioners' response is to blithely label these concerns from the nation's top diplomat as "speculative" or incorrect. Resp.54-55. But those determinations belong to the Executive. *Holder v. Humanitarian L. Project*, 561 U.S. 1, 33-35 (2010). Ordering updates on foreign affairs in Venezuela and the ability to return politically sensitive FTO-designated aliens imperils national security.

JA370. That does not resemble a report about a single alien, as Petitioners posit. Resp.55.

Petitioners heavily rely on the "facilitation" order in *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025). Resp.54. But the Supreme Court rejected the order to "effectuate return" given the "foreign affairs concern" and left the means of facilitation to the Government. *Id.*; *J.O.P.*, 2025 WL 1431263, at \*14-15 (Richardson, J., dissenting) (distinguishing *Abrego* on this ground). Here the district court ordered the United States to "transport" Petitioners from "a third country," which would likely require high-level diplomacy, especially with a country as complicated as Venezuela. JA448. Facilitating one person is much different than effectuating transport for 22 to 137 aliens. Such broad relief to class members who may lack redressable collateral consequences also violates *CASA*, which was not an issue in *Abrego*.

Moreover, expending resources returning and detaining these aliens just to likely remove them again would be inequitable. Br.61. Petitioners argue the government cannot "prejudge" their immigration proceedings, Resp.54, yet there are many reasons the aliens are likely to be removed again, Br.61. In addition, there are serious security and legal

32

concerns with returning FTO-designated members. *J.G.G.*, 147 F.4th at 1055 (Katsas, J., concurring).

And no jurisdiction would exist for remote hearings, because Petitioners would not be in custody to file new petitions. *Qassim v. Bush*, 466 F.3d 1073, 1078 (D.C. Cir. 2006). Petitioners and the district court never contest this, suggesting it can be resolved in individual cases. Resp.57; JA447. Apparently the United States must facilitate up to 137 remote hearings—all subject to dismissal for lack of jurisdiction. That is clearly inequitable. There are also numerous practical concerns with conducting a due-process-compliant remote hearing. Br.62. Petitioners suggest this is speculative and cite a case about a single witness appearing remotely after the court required proof there was no alternative. Resp.56 (citing *El-Hadad v. United Arab Emirates*, 496 F.3d 658, 669 (D.C. Cir. 2007)). The district court here did not make remote hearings a last resort, but instead offered them to 137 members. Petitioners also speculate that many remote hearings can be resolved on the papers. Resp.55. There is no basis for that as Petitioners, after all, have the burden to prove they are not TdA members. *See Ex parte Risse*,

257 F. 102, 104 (S.D.N.Y. 1919) ("burden" is on the alien to show he is "not" part of that "hostile" invasion or incursion).

Moreover, these remedies are inconsistent with traditional habeas remedies, namely release. Br.59. Petitioners' only response is that habeas is apparently flexible enough to require redetention. Resp.57. Given that Petitioners are ostensibly free, it is also difficult to see the irreparable harm to them when the remedy requires detention and will likely result in removal. The equities thus favor reversal of the district court's stunning order.

## V. CONCLUSION

This Court should reverse the district court's orders and remand with directions to enter judgment for Defendants.

Respectfully submitted,

**Brett A. Shumate**
Assistant Attorney General

**Drew C. Ensign**
Deputy Assistant Attorney
 General

s/Tiberius Davis
**Tiberius Davis**
Counsel to the Assistant Attorney
 General
Civil Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington DC 20530-0001
(202)-860-8970
tiberius.davis@usdoj.gov

**Anthony Nicastro**
Director
Office of Immigration Litigation

Dated: July 6, 2026

*Counsel for Defendants–Appellants*

## Certificate of Compliance for Briefs

1.  This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,470 words.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word for Microsoft 365 MSO (Version 2604 Build 16.0.19929.20086) 64-bit.

Dated: July 6, 2026                 s/Tiberius Davis
                                    **Tiberius Davis**